In the
United States Court of Appeals
For the Seventh Circuit

No. 99-3057

Jane R. Doe and Jane C. Doe,

Plaintiffs-Appellants,

v.

Howe Military School et al.,

Defendants-Appellees.


Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
Nos. 3:95-CV-0206RM & 3:95-CV-0717RM--Robert L. Miller,
Jr., Judge.


Argued February 10, 2000--Decided September 21, 2000


   Before Flaum, Chief Judge, and Coffey and Diane P.
Wood, Circuit Judges.

   Diane P. Wood, Circuit Judge. The two Jane Does
before us in this case claim that they suffered
from a variety of forms of sexual harassment,
abuse, and fraud when they attended Howe Military
School, in Howe, Indiana, in the early 1990s.
They relied on Title IX of the Educational
Amendments of 1972, 20 U.S.C. sec.sec. 1681-88,
and a variety of state law theories to support
their claims. The district court dismissed all
but Jane C. Doe's fraud claim on the ground that
those claims were barred by the applicable
statutes of limitations. With the grant of
summary judgment for Howe on the remaining fraud
claim, the proceedings in the district court were
over, and the plaintiffs took this appeal.
Finding no error in the court's rulings, we
affirm.

I

   In 1989 and 1990, Jane R. Doe and Jane C. Doe
enrolled as students at Howe Military School.
Howe is a military boarding school operated as a
not-for-profit Indiana corporation. At the time
of enrollment, Jane C. was 14 and Jane R. was 15.
The two women allege that they suffered various
forms of abuse during their time as students at
Howe. Specifically, they allege that John R.

Giles, a U.S. Army Sergeant who worked as a Military Instructor and Tactical Officer at the school, sexually abused them repeatedly. Giles would offer to cancel their demerits or to give them special privileges--like soda pop, candy and cigarettes--in return for sexual favors. Jane R. and Jane C. felt compelled to agree. In addition, they allege that Giles and other Howe employees made derogatory comments about them, implying they were immoral and unchaste; that the school's employees spoke poorly about female cadets in general; and that male cadets harassed and abused them.

Years later, Jane R. and Jane C. sued Howe Military School, Giles, Thomas Merritt (Superintendent of Howe), Lawrence E. Cowles (Commandant of Howe), and Timothy L. Cook (Tactical Officer at Howe), the latter three in both their individual and official capacities. Although their suits were separate, they filed identical seven-count complaints. Count I of each complaint alleged quid pro quo sexual harassment under Title IX; Count II alleged hostile environment discrimination under Title IX; Count III alleged negligence; Count IV alleged intentional harm; Count V alleged assault and battery; Count VI alleged invasion of privacy; Count VII alleged defamation. Jane C. also added a Count VIII to her complaint, alleging fraud. Both plaintiffs explained the timing of their legal action by noting that the suits were filed within a year of their becoming aware of their injuries. For Jane R., the date of that realization was April 1994; she filed suit the following March. Jane C. became aware of her injuries in April 1995 and filed suit in August of that year. On May 13, 1996, the district court consolidated the two cases, along with those of three other former Howe students.

The district court eventually dismissed Counts I - II (Title IX claims) and Counts III - VII (state law claims) on the grounds that the claims were time-barred. The court then granted summary judgment on Jane C.'s Count VIII (fraud). At that point, it entered a final judgment on the consolidated cases, the effect of which we now address.

II

Before we can reach the merits, we must first decide whether we have jurisdiction over Jane R.'s appeal. The answer depends on the degree to which these two cases were consolidated in the district court. If they merged entirely, then there was no appealable final judgment until the last claim of the last party was resolved. Moreover, if they merged entirely, then the

filing of a timely motion under Fed. R. Civ. P.
59(e) by one party sufficed to toll the time for
filing a notice of appeal for all parties. See
Fed. R. App. P. 4(a)(4)(A)(iv). If, on the other
hand, the two cases were still technically
separate enough to require separate final
judgments, then one person's filing of a Rule
59(e) motion would be of no help to the other,
and Jane R.'s appeal would be untimely.

In order to sort all of this out, we need to
examine the history of the cases and their
consolidation. Jane C.'s case was originally
assigned the case number 3:95-CV-717; Jane R.'s
case had the number 3:95-CV-206. On May 13, 1996,
the district court consolidated these two cases
with three others, stating:

. . . the court CONSOLIDATES, for purposes of
discovery and trial, the following cases: 3:95-
206RM, 3:95-240RM, 3:95-453RM, 3:95-717RM, and
3:95-818RM. All filings in these five
consolidated cases shall henceforth be docketed
in Cause No. 3:95-CV-206, and the Scheduling
Order entered in 3:95-CV-206 shall govern these
five consolidated cases.

Later orders related to these cases were issued
under docket number 3:95-CV-206 (which had
originally pertained only to Jane R.'s case),
often with the notation "consolidated" somewhere
in the caption.

The consolidated case proceeded. Over time, all
of Jane R.'s seven claims were dismissed in a set
of three orders issued on August 29, September
23, and October 25, 1996. As Jane R.'s part of
the case appeared to be over, on January 30,
1997, the defendants filed a motion under Fed. R.
Civ. P. 50 and 54(b) to enter a final judgment in
her case. Ten months later, on November 17, 1997,
the district court denied the motion. The
district court acknowledged the defendants'
desire to put to rest Jane R.'s claims, but it
found that granting the motion for a final
judgment in Jane R.'s case would inevitably lead
to successive appeals on identical issues, since
Jane C. would in all likelihood appeal the
resolution of the claims she had in common with
Jane R. once all of her claims had been finally
adjudicated.

As it turned out, Jane C.'s case was the last
of the five cases to be fully resolved. (The
three other plaintiffs whose cases had been
consolidated with Jane C.'s and Jane R.'s settled
their claims.) On June 21, 1999, the district
court entered two judgments. The first one had a
caption listing all five of the plaintiffs in the
consolidated cases and their individual case

numbers; the consolidated case number appears under the heading "Judgment in a Civil Case." The other judgment listed only Jane C. Doe as plaintiff; under the heading "Judgment in a civil case" appears Jane C.'s individual case number as well as the notation "(Member case to case consolidation with lead case 3:95-CV-206 RM)." The text of both documents was identical, reading:

IT IS ORDERED AND ADJUDGED that no issues remaining, judgment is hereby entered for the defendants on the amended complaint (all claims) of Jane C. Doe in consolidated cause 3:95-CV-206 and shall close 3:95-CV-717, the case in which Jane C. Doe's complaint was originally filed.

(Italics added.) Jane C. then filed a Rule 59(e) motion on July 6, 1999. The court denied her motion on July 12, 1999, and both Jane R. and Jane C. filed a joint notice of appeal on August 11, 1999.

   The defendants urge that the judgments of June 21, 1999, addressed only Jane C.'s case, and thus that Jane R. was too late in filing her notice of appeal. They focus on Jane R.'s failure to join in Jane C.'s Rule 59 motion, rather than arguing that the final judgment in Jane R.'s case was entered back around October 25, 1996. In their response to this argument, the Does inadvertently raise a different potential problem with Jane R.'s appeal. They suggest in their reply brief that perhaps "no final judgment as to Jane R. Doe's claims was ever entered." Reply Brief at 5; see also id. at 7. Putting to one side the effect of the consolidated June 21 judgment that lists Jane R's docket number, this statement is literally true. The district court entered no Rule 58 judgment in Jane R.'s case after the October 25, 1996, order disposing of the last of her claims; it declined to enter a Rule 54(b) judgment in her case; and there is no separate Rule 58 judgment for Jane R. in the record. Instead, we have a consolidated Rule 58 judgment whose caption (but not text) refers to her case, and we have a separate Rule 58 judgment whose caption and text refer only to the final disposition of Jane C.'s case. If the defendants are correct that Jane R. could not take advantage of Jane C.'s Rule 59 motion, then her effort to appeal would be barred as untimely. If the plaintiffs are correct that there was never a final judgment for Jane R., then the proper course would be to dismiss her appeal as premature and wait for the district judge to complete proceedings in her case. And if the plaintiffs' original position is correct--that the consolidation cures all these problems--then we can proceed to the merits on both claims.

While we regret that this became so complicated, we conclude that the third of these possibilities best describes what happened below, and thus that both appeals are properly before us. Two questions are relevant to this determination: (a) whether each plaintiff's case retained its separate identity and, if not, (b) whether the district court in fact disposed of all the claims, rendering the case appealable even in the absence of a formal Rule 58 judgment. See Otis v. City of Chicago, 29 F.3d 1159, 1165–66 (7th Cir. 1994) (en banc) (holding Rule 58 judgment not necessary for appellate jurisdiction).

Unfortunately, the fact that the district court consolidated the cases under Rule 42(a) does not give a simple answer to the first question. The circuits disagree about whether or not this step causes the previously separate cases to merge and lose their individual identity. The issue arises most frequently in the context of whether a Rule 54(b) judgment is required before a case that has been consolidated with others can be appealed. Compare, e.g., In re Massachusetts Helicopter Airlines, Inc., 469 F.2d 439 (1st Cir. 1972) (treating all consolidated cases as separate for purposes of appellate jurisdiction), with Huene v. United States, 743 F.2d 703, 705 (9th Cir. 1984) (treating cases consolidated for any purpose as a single case for appealability determinations); see also, Sandwiches, Inc. v. Wendy's Int'l, Inc., 822 F.2d 707, 710 (7th Cir. 1987) (describing approaches of various circuits); Wright & Miller, Federal Practice and Procedure sec. 2382 at 429, sec. 2386 at 468-69 & nn. 8, 9 (1995). This circuit has opted not to take a strict, categorical approach. Instead, we "look[ ] to the purposes of the final decision rule and allow[ ] an appeal without a Rule 54(b) judgment only when the parties and questions readily are distinct." Sandwiches, 822 F.2d at 710. We explained our approach in Ivanov-McPhee v. Washington Nat'l Ins. Co., 719 F.2d 927 (7th Cir. 1983):

[W]here consolidated cases could, without undue burden, have been brought as one action, where there is no clear evidence that they have in substance been consolidated only for limited purposes, and where there is no showing that the appellant's interests will be seriously undermined by dismissal of the appeal, the provisions of Rule 54(b) must be complied with, notwithstanding that the judgment in question disposes of all the claims and parties on one of the original actions.

Id. at 930. See also Eckstein v. Balcor Film

Investors, 8 F.3d 1121, 1125 (7th Cir. 1993).

Although the language in the two Rule 58 judgments of June 21 confused matters, the record demonstrates that the district court and the parties understood these cases to be consolidated for all purposes. Even though each plaintiff's case presented a slightly different mix of defendants and claims, and the district court was careful to keep track of the progress of each individual plaintiff's claims, the cases had such tremendous overlap that the court treated them as one. All orders were entered under the consolidated case number and caption, settlement conferences and updates were conducted jointly, and progress reports referred to all of the cases. That the defendants moved for a Rule 54(b) judgment for Jane R.'s claims demonstrates that they believed the court's consolidation of the various cases in effect merged them into a single action. Cf. Eckstein, 8 F.3d at 1125 (finding district court did not merge consolidated cases where court explicitly stated there was no merger and entered a separate Rule 58 judgment in each individual case). The district court's order denying the defendants' motion reinforces this view. Although it is more usual that a consolidation merges cases into one where each case has the same plaintiff, see, e.g., Ivanov-McPhee, supra, we find that merger occurred here. As we explained in Eckstein: "[C]ourts should keep in mind the relation between consolidation and appeal. Preserving formally separation may multiply the number of appeals, which should not occur when there is only one nucleus of facts." 8 F.3d at 1125.

This finding takes care of both potential problems with Jane R.'s appeal. First, under Fed. R. App. P. 4(a)(4)(A), we find that Jane C.'s Rule 59(e) motion tolled the filing period for both plaintiffs, as that rule extends the time to appeal "for all parties." Had Jane R. and Jane C. originally filed suit together, they would both be "parties" to the same suit. See Eckstein, 8 F.3d at 1124-25. The nature of the consolidation in this case achieved the same result. Second, we find that the district court's orders of June 21, 1999, demonstrate that the court understood that by resolving Jane C.'s fraud claim, it was resolving the last outstanding claim of the consolidated case; the manner in which judgment was entered on this claim demonstrates that the district court meant to terminate the consolidated case as a whole. Therefore, a separate Rule 58 judgment specifically terminating Jane R.'s case was unnecessary, and our jurisdiction over both parties' appeals is secure.

III

Turning now to the merits, the Does' appeals raise five issues. First, both Does contest the district court's dismissal of their claims I – VII as time-barred. Second, both Does argue that the district court should have granted them leave to amend their complaints. Third, Jane C. appeals the district court's grant of summary judgment in favor of the defendants on her fraud claim. Finally, they contest (fourth) the district court's rulings regarding discovery and (fifth) its denial of Jane C.'s Rule 59(e) motion.

A.  Rule 12(c) Dismissal

After the pleadings were closed, the court dismissed Counts III – VII (all state law claims) on September 23, 1996, on the grounds that they were time-barred under Indiana law. In the same order, the court also dismissed the two Title IX claims (Counts I and II) as time-barred. Title IX does not have its own statute of limitations. The court therefore borrowed the state statute of limitations for personal injury actions--the state law claim the court viewed as most similar to the Title IX allegations--and applied it to the Title IX claims. We review de novo the district court's Rule 12(c) dismissal of the claims as time-barred. Gutierrez v. Peters, 111 F.3d 1364, 1368 (7th Cir. 1997).

Indiana law requires that any action for injuries to the person or character must be commenced within two years after the cause of action accrues. IC 34-11-2-4 (formerly Ind. Code sec. 34-1-2-2(1)). "[A] cause of action for a tort claim accrues and the statute of limitations begins to run when the plaintiff knew, or in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." Wehling v. Citizens Nat'l Bank, 586 N.E.2d 840, 843 (Ind. 1992); see also, Burks v. Rushmore, 534 N.E.2d 1101, 1103-04 (Ind. 1989). There is an exception for cases where the plaintiff is under a legal disability when the cause of action accrues. In those circumstances, she may bring the cause of action within two years after the disability is removed. IC 34-11-6-1 (formerly Ind. Code sec. 34-1-2-5). So, for example, where the plaintiff was a minor when the cause of action accrued, she must bring the action within two years of reaching majority.

Both Does filed their actions more than two years after reaching majority: Jane R. turned 18 on October 5, 1992, and filed suit March 21, 1995; Jane C. turned 18 on February 11, 1993, and filed suit August 30, 1995. Thus, the general

tolling period provided by IC 34-11-6-1 cannot save their actions. Recognizing that, they both argue that their suits are nonetheless timely because the date from which the two years started to run was the date when each became aware of her psychological injuries, not the time of the underlying events (as tolled during their minority). Here, they assert (and we accept for present purposes) that they filed suit within two years of the time when they recognized their injuries.

While we appreciate the often elusive nature of psychological injury, we conclude that the plaintiffs' argument cannot prevail in the face of the Indiana Supreme Court's decision in Doe v. Shults-Lewis Child and Family Services, 718 N.E.2d 738 (Ind. 1999). In Shults-Lewis, two women who had been foster children at the Shults-Lewis home sued the home for repeated sexual abuse suffered at the hands of one of the home's employees. Both women left the home in the late 1960s and did not bring suit until 1990, well into adulthood. Jane F. testified regarding the precise events of abuse, including hundreds of acts of intercourse and the abusive employee's giving her quinine pills to induce an abortion. She did not bring suit until 1990 because until then she did not realize the connection between the abuse and her psychological distress. Jane I. also suffered hundreds of incidents of sexual abuse; Jane I., however, did not remember anything regarding the abuse until 1990, when she had several conversations with Jane F. and other members of the group home about the abuse. These conversations triggered memories about the circumstances surrounding the abuse, but not the actual events of abuse. The defendants argued that both women's claims were time-barred. The Indiana Supreme Court came to a different result for each plaintiff. Jane F.'s claims were barred, because: "Where the plaintiff actually retains memories of the event, there is nothing to cause a delay in the commencement of the cause of action. There was nothing to prevent [Jane F.] from bringing her claim when her legal disability ended at age eighteen." 718 N.E.2d at 747 n.3. In contrast, Jane I.'s claims were not time-barred because she had no memory of the events and had presented sufficient facts to invoke the equitable doctrine of fraudulent concealment, which tolled the statute of limitations. Following the logic used in cases involving suppressed memories of parental abuse, the court also ruled that the home may be estopped from asserting the statute of limitations in Jane I.'s case, because the home was her guardian and therefore owed a duty to inform her of the facts of abuse. Because the home did not inform Jane I. (and Jane I. had no independent memories of the

abuse), it concealed the information necessary for her to assert her claim any earlier. Id. at 748.

The Indiana Supreme Court's analysis of Jane F.'s claims controls in this case: both Jane R. and Jane C. remembered the events of abuse, and therefore nothing prevented them from asserting their claims during the two years after they reached majority. The district court applied the same statute of limitations, and the same analysis, to the Does' Title IX claims. Because the plaintiffs do not challenge whether it was correct for the district court to borrow the state statute of limitations for the Title IX claims, we do not address whether that ruling was correct.

## B.  Denial of Motion for Leave to Amend

The Does requested leave to amend their pleadings if the district court granted the motions to dismiss the claims as time-barred, and the motions to dismiss the Title IX claims against the individual defendants. The Does' request to amend consisted of the following:

### IV.  REQUEST IN THE ALTERNATIVE

In the alternative, plaintiffs request that they be permitted to amend their complaints to more specifically allege a claim against the individual defendants, Merritt and Cowles, under Title IX, or, in the alternative, to state a claim against the individual defendants, Merritt and Cowles, pursuant to 42 U.S.C. sec. 1983. Amendments to pleadings should be freely given when justice so requires.

They also wanted to amend their pleading against defendant Giles in the event the court granted Giles's motion for judgment on the evidence. The district court denied the motions, because they did not comply with District Rule 7.1, which states "[e]ach motion shall be separate; alternative motions filed together shall each be named in the caption on the face." The district court noted that the Does failed to explain in their request precisely how they planned to amend their complaints, they did not demonstrate good cause to amend the pleadings after the deadline, nor more generally did they show why justice required such amendments.

Whether the grant or denial of leave to amend was proper is a question we review for abuse of discretion. Bisciglia v. Kenosha Unified Sch. Dist. No. 1, 45 F.3d 223, 226 (7th Cir. 1995). Fed. R. Civ. P. 15(a) provides that, with the

exception of amendments made before the answer is served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given." Although this is a liberal standard, under which "leave to amend shall be freely granted when justice so requires," "justice may require something less in post-judgment situations than in pre-judgment situations." Twohy v. First Nat'l Bank, 758 F.2d 1185, 1196 (7th Cir. 1985), quoted in Diersen v. Chicago Car Exchange, 110 F.3d 481, 489 (7th Cir. 1997).

In this case, the district court did not abuse its discretion in denying the Does' motions to amend the pleadings. As the judge observed, the motions did not state what specifically the Does planned to allege in their amended pleadings. See Glatt v. Chicago Park Dist., 87 F.3d 190, 194 (7th Cir. 1996) (holding motion to amend or supplement the complaint, unlike an original complaint, "requires more to compel acceptance than the fact that the pleading sought to be added states a claim"). With respect to the Title IX claim, the Does argue that "it was clear that the requested amendments went to the issue of whether plaintiffs should have known of their causes of action earlier, because that was the issue raised by defendants' motions." A quick glance at the motion, which we have set forth above, shows that this is not the case. District courts do not have to engage in guessing games about proposed amendments, and the judge here was well within his discretion to deny this motion.

The Does did state something more specific with regard to their desire to bring a sec. 1983 action. But they could have alleged a sec. 1983 violation in their original or amended complaints. They provide no reason why this new claim could only be brought at the last moment. If there were facts warranting the delay, the Does should have brought them to the court's attention. See Glatt, 87 F.3d at 194 (stating court should consider the probable merit of the claim sought to be added, as well as whether the claim could have been added earlier and the burden on the defendant in trying to meet it). Furthermore, as Giles points out, it would have been futile to have allowed the Does to amend their complaints to assert a sec. 1983 action, because such an action would also have been time-barred under Indiana's two-year statute of limitations. See Stevens v. Northwest Indiana Dist. Council, United Brotherhood of Carpenters, 20 F.3d 720, 726 (7th Cir. 1994).

At bottom, the Does wanted another shot in the event their claims were dismissed. But pleading is not like playing darts: a plaintiff can't keep

throwing claims at the board until she gets one
that hits the mark. See id.


   C.   Summary Judgment on Jane C.'s Fraud Claim

  Jane C. filed an additional claim (count VIII)
alleging actual and constructive fraud. The
essence of her claim was that Howe officials,
Merritt and Cowles, intentionally misrepresented
the conditions at Howe in order to induce her to
attend the school. She claimed that the officials
told her she would be protected at Howe; she also
claims that the school's promotional materials
implicitly represented that she would be safe and
protected from harm. The district court granted
summary judgment on both theories, and so our
review is once again de novo. L.R.J. Ryan v.
Wersi Electronic GmbH and Co., 59 F.3d 52, 53
(7th Cir. 1995).

  Under Indiana law, to prove an actual fraud
claim, a plaintiff must demonstrate: "(1) a
material misrepresentation of past or existing
fact which (2) was untrue, (3) was made with
knowledge of or in reckless ignorance of its
falsity, (4) was made with the intent to deceive,
(5) was rightfully relied upon by the complaining
party, and (6) which proximately caused the
injury or damage complained of." Lawyers Title
Ins. Corp. v. Pokraka, 595 N.E.2d 244, 249 (Ind.
1992), quoted in Lycan v. Walters, 904 F.Supp.
884, 897 (S.D. Ind. 1995). "[A]ctual fraud may
not be based on representations regarding future
conduct, or on broken promises, unfulfilled
predictions or statements of existing intent
which are not executed." Lycan, 904 F.Supp. at
897, citing Biberstine v. New York Blower Co.,
625 N.E.2d 1308, 1315 (Ind. Ct. App. 1993).

  There are several problems with Jane C.'s
allegations of actual fraud. First, Jane C. did
not state in her deposition that either defendant
Cowles or Merritt personally misrepresented any
facts to her. She said only that she saw Cowles
and Merritt from time to time around the school
and that her only personal contact with both
defendants was when she went to them to appeal
some demerits. She met with neither of these
defendants prior to enrolling in the school.

  Second, the sorts of statements on which Jane
C. seeks to hang her fraud claim relate generally
to the school's objectives for students'
education upon enrollment. For example, when Jane
C. visited the school for an initial interview,
she and her parents met with the admissions
director, Mr. Cox, for about an hour. Mr. Cox
explained how everything at the school worked,
including the disciplinary system, and he said

that she would be protected and safe from harm. (Jane C. could not remember precisely what she understood she would be protected from.) Jane C. also pointed to Howe promotional brochures and the school's rules and regulations to support her fraud claim. The Howe brochures contain broad statements of the school's goals and objectives for its students' education (e.g., "complete preparatory training . . . can only be achieved with a limited number of serious minded cadets. Therefore selection of new students must be carefully made"; "Howe will consider any student for admission who demonstrates average to above average academic ability, is of good moral character and proven conduct, and who shows a willingness to attend."). The rules and regulations contain more information about Howe's "philosophy and objectives" and explain the school's disciplinary system in detail. This kind of promise of future conduct or objectives does not amount to actionable fraud under Indiana law, and the district court was therefore correct to grant summary judgment on the actual fraud claim.

Although promises of future conduct do not give rise to claims of actual fraud, they can, in some instances, give rise to a claim of constructive fraud. Estates of Kalwitz v. Kalwitz, 717 N.E.2d 904, 913 (Ind. Ct. App. 1999). Constructive fraud arises by operation of law when there is a course of conduct which, if sanctioned by law, would secure an unconscionable advantage, whether or not there is actual intent to defraud. Wells v. Stone City Bank, 691 N.E.2d 1246, 1250 (Ind. Ct. App. 1998). The elements of constructive fraud under Indiana law are: (1) a duty existing by virtue of the relationship between the parties; (2) representations or omissions made in violation of that duty; (3) reliance on the deceptive statements or omissions by the complaining party; (4) injury as a result of this reliance; (5) the gaining of an advantage by the defrauding party over the complaining party. Id. at 1250-51. See also Paulson v. Centier Bank, 704 N.E.2d 482, 490-91 (Ind. Ct. App. 1998). "Any breach of a duty arising from a confidential or fiduciary relation, whereby the party at fault without any actual fraudulent intent gains an advantage at the expense of any one to whom he owes such duty, amounts to a constructive fraud." Hall v. Indiana Dept. of State Revenue, 351 N.E.2d 35, 38 (Ind. Ct. App. 1976), quoting Gorham v. Gorham, 103 N.E. 16, 18 (Ind. Ct. App. 1913).

Jane C. claims that the defendants failed to inform her that the conduct of students and employees could be inappropriate and even dangerous, that the defendants did not provide her with this information out of their desire to

induce her to attend the school (as part of a plan to increase female enrollment to bring in more tuition dollars), and that this omission of material fact amounted to constructive fraud. The problem with Jane C.'s claim is that prior to her enrollment, the defendants probably owed her no duty, see Wickey v. Sparks, 642 N.E.2d 262, 266 (Ind. Ct. App. 1994), and so she cannot establish the first element of a constructive fraud claim. Even if Indiana would recognize the "potential student - private school" recruitment relationship as the kind that gives rise to a duty, her claim still cannot succeed. It would then be analyzed exactly as her post-enrollment claim is.

For purposes of the post-enrollment claim, we assume that the school did owe her a duty to supervise and protect her while she was a student. See Miller v. Griesel, 308 N.E.2d 701, 706 (Ind. 1974). At the same time, however, Indiana holds that schools are not insurers of the safety of their pupils, nor are they strictly liable for any injuries that occur. See Norman v. Turkey Run Community School Corp., 411 N.E.2d 614, 617 (Ind. 1980).

Jane C. claims that the school should have told her that the conduct of its students and employees was inappropriate, that she ran a substantial risk of harm from physical or mental abuse if she attended, that she would need counseling to avoid or remedy that harm from her first day forward, and that the school would in other ways be wanting. It omitted to make these statements, she continues, because it wanted to induce female cadets to attend the school in order to get their tuition payments. The record, however, does not support Jane C.'s assertions that the school's omission to communicate these alleged risks to her was deceptive. To the contrary, the school had rules forbidding abusive behavior, and the exhibits that Jane C. attached to her motion in opposition to summary judgment show that the school took disciplinary action where it was aware that school rules had been violated. Its alleged omissions therefore cannot support the hypothesis of the type of deceitful and sadistic behavior that Jane C. accuses Howe of engaging in. Following Turkey Run, we believe that Indiana would not require a school to outline the worst case scenario that a potential or actual student could confront, since its duty is only to exercise reasonable care. In addition, to the extent that the "unconscionable advantage" factor of the Indiana constructive fraud tort is an independent factor rather than a conclusion from the first four, we doubt that the institution's alleged desire to enroll more female cadets is the sort of "unconscionable

advantage" that supports a claim. In Wells v. Stone City Bank, supra, for example, the court found an unconscionable advantage when a bank created a sham transaction that generated interest income for itself but no benefit for its customer. See also Swain v. Swain, 576 N.E.2d 1281, 1283-84 (Ind. Ct. App. 1991) (finding unconscionable advantage where plaintiff borrowed money for defendant based upon defendant's repeated promises to make payments on the debt and to marry plaintiff); McDaniel v. Shepherd et al., 577 N.E.2d 239 (Ind. Ct. App. 1991) (holding that jury could find constructive fraud where agent for insurance company told accident victim she would do better without an attorney and then paid her $1000 in exchange for a release from liability for all "known and unknown" injuries). Recruiting female students with literature and statements that have not been shown to be intentionally deceptive, and then collecting normal tuition payments from them in exchange for instruction, falls short of this standard.

D.  Discovery Rulings

It is apparent from the parties' briefs and the court's rulings that discovery in these cases was protracted and ugly. It went on for more than four years. The plaintiffs apparently asked for nearly every file in Howe's possession, and Howe was uncooperative. Going through the record exhaustively to determine whether the district court abused its discretion is, however, unnecessary (and in any event an exercise that would be inconsistent with that standard of review). Notwithstanding Jane C.'s claim to the contrary, the contested discovery rulings did not make a difference in the disposition of the plaintiffs' claims. All claims except Jane C.'s fraud claim were dismissed as time barred; discovery could not have changed that fact. Nor could it have changed the fact that the allegations of fraud are legally insufficient: the allegedly fraudulent statements were promises of future conduct, and therefore not actionable as actual frauds; and there was no constructive fraud because Howe had no unconscionable advantage over her. The district court's discovery rulings therefore do not amount to reversible error, no matter how plaintiffs think they should have been handled.

E.  Rule 59(e) Motion

Jane C. filed a motion to alter or amend the judgment and for relief from judgment under Fed. R. Civ. P. 59(e) and 60(b)(3); because she filed it within 10 days of entry of the final judgment,

the court properly construed it as a Rule 59(e) motion. See Helm v. Resolution Trust Corp., 43 F.3d 1163, 1166 (7th Cir. 1995). Jane C.'s motion urged the court to reconsider its grant of summary judgment because she maintained that Merritt and Cowles had not produced all of the evidence she had requested. Her discussion of the missing evidence did not convince the court that the grant of summary judgment was improper.

The district court did not abuse its discretion in denying Jane C.'s motion. See Britton v. Swift Trans. Co., Inc., 127 F.3d 616 (7th Cir. 1997) (grant or denial of Rule 59(e) motion reviewed for abuse of discretion). The court had all of the evidence before it and was intimately familiar with the defendants' conduct during discovery. We see no reason to overturn the district court's considered judgment.

IV

The judgment of the district court is Affirmed.