# In the
# United States Court of Appeals
## For the Seventh Circuit
_____

No. 03-2768

KERMIT J. BRESSNER,

*Plaintiff-Appellant,*

v.

SHIRLEE AMBROZIAK, DENNIS AMBROZIAK,
AMZO ZIP MAILING SERVICES, INC., an
Illinois corporation, et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 C 2537—**Joan Humphrey Lefkow**, *Judge.*

_____

ARGUED JANUARY 13, 2004—DECIDED AUGUST 13, 2004

_____

Before BAUER, MANION, and ROVNER, *Circuit Judges.*

MANION, *Circuit Judge.* Over twenty years ago, Kermit J. Bressner sold his business to Dennis Ambroziak for cash and a note for $342,000 for the balance due. Under Ambroziak's ownership the business failed, and Ambroziak never paid Bressner any money on the note. When Ambroziak filed for bankruptcy, the debt was not discharged. All of Bressner's attempts to collect have failed. Ambroziak claims he has no

assets and has had no income for many years, but Ambroziak's wife owns a successful business that Bressner claims Ambroziak manages and from which he derives many benefits. Bressner sued Ambroziak, his wife, and the business in federal court. He now appeals from a series of decisions of the district court dismissing his claim against the defendants for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), as well as claims under Illinois law for civil conspiracy and violation of the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/1 *et seq.* ("UFTA"). The district court also rejected Bressner's request that a constructive trust be imposed upon the assets of two of the defendants, Shirlee and Dennis Ambroziak. Finally, Bressner also appeals the decision of the district court to deny his motion to file a third amended complaint. We affirm.

## I.

The facts of this case are drawn from Bressner's second amended complaint. Bressner primarily appeals from the district court's dismissal of the complaint for failure to state claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Accordingly, we accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in Bressner's favor. *Dixon v. Page*, 291 F.3d 485, 486, (7th Cir. 2002).

In March, 1981, Bressner sold his business, Jay's TV, to Dennis Ambroziak for cash and a $342,000 note secured largely by the existing inventory of Jay's TV. No payments have ever been made on this note. Presumably, Bressner did not record a security interest in the inventory, and the assets of Jay's TV were seized to satisfy a third party's loan to Dennis.

On June 30, 1982, Dennis and his wife, Shirlee, filed a joint Chapter 7 petition in bankruptcy. Through an adversary proceeding against Dennis (but not Shirlee), Bressner obtained, in 1985, a judgment of nondischargeability on the 1981 note. Bressner estimates that, with interest, Dennis's debt to him is now approximately $1.2 million.

Sometime after the Ambroziaks' discharge from bankruptcy (other than Dennis's debt to Bressner), Shirlee started her own business, Amzo Zip Mailing Services, Inc. ("Amzo"). Amzo is an Illinois corporation and Shirlee is its sole share-holder. Bressner alleges that Amzo is the successor to a business started by Dennis but unrelated to Jay's TV. According to Bressner, until starting Amzo, Shirlee had no experience in the management or operation of a business. Amzo was initially run out of the basement of the Ambroziaks' 3.5 acre home in Woodstock, Illinois (the "Bull Valley Property"). After the couple's bankruptcy, Shirlee purchased the Bull Valley property in her own name for $470,000 and made substantial improvements to the property after that. The property remains solely in her own name.[1]

Amzo has been a successful business. The company now employs approximately 30 people. Since 1996, Amzo has operated out of the Bull Valley property as well as a 46,300 square foot commercial building in Chicago (the "Chicago Property"). The Chicago Property is held in trust with Harris Palatine, N.A. as trustee and Shirlee as the sole beneficiary.

The Ambroziaks' financial affairs and the management of Amzo, according to Bressner, are structured to prevent

---

[1] The property was held in trust, with Shirlee as the sole beneficiary, for a period of time, but title has apparently been conveyed back to Shirlee.

Bressner from collecting on the outstanding debt. Apparently, Dennis has no income or assets upon which Bressner can collect. Bressner maintains, however, that the success of Amzo is due to the work and efforts of Dennis. According to Bressner, Dennis is the moving force behind the company and the *de facto* manager of the company's affairs. Although Dennis does not receive a salary, he has access to a company expense account and, of course, is married to, resides with, and enjoys the financial support of Shirlee, whom Bressner refers to as the nominal head of Amzo.

Since starting Amzo, Shirlee has applied for and received loans and lines of credit from several banks. In these applications, Shirlee represented that she enjoyed a monthly income of $12,500 and that she was the sole shareholder, officer, and director of Amzo. She has not, in any of these applications, revealed the extent of Dennis's involvement in the company or, as Bressner alleges, that Dennis is the moving force behind the operation and management of Amzo.

A.  Procedural Background

In April 2002, Bressner filed his first complaint in this lawsuit. In that complaint Bressner raised a RICO claim as well as state law claims of civil conspiracy and fraudulent transfer. Bressner also requested that a constructive trust be imposed on the Ambroziaks' joint assets. The district court dismissed Bressner's RICO claim, finding that the facts did not establish the requisite predicate act of bank fraud. Because Bressner had not pleaded diversity jurisdiction, the district court also dismissed, with leave to amend, Bressner's complaint in its entirety. *See* 28 U.S.C. § 1367.

Bressner returned to the district court again with a "Second Amended Complaint" in January 2003. In that complaint, Bressner, asserting diversity jurisdiction, raised only

his state law claims. In response to the defendants' Rule 12(b)(6) motion, the district court, in May 2003, dismissed this complaint. In a ruling in June 2003, the court also denied Bressner's motion for leave to file a "Third Amended Complaint." This complaint would have added a request for a declaratory judgment on the theory that Shirlee and Amzo acted as alter egos of Dennis in his attempt to shield assets from his creditors. This appeal followed.

## II.

In this appeal, Bressner challenges the dismissal of his RICO claim, his state law claims, and the denial of his request for the imposition of a constructive trust. Bressner also appeals the denial of his motion for leave to file a third amended complaint. We turn first to Bressner's RICO claim.

## A.   The RICO Claim

At the heart of his first amended complaint and this appeal is Bressner's claim that the Ambroziaks, through Amzo, have engaged in a pattern of racketeering with the ultimate aim of concealing from Dennis's creditors the true nature Dennis's role in, and the assets he has derived from, Amzo. To establish a RICO claim, a plaintiff must show " '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.' " *Lachmund v. ADM Investor Servs., Inc.*, 191 F.3d 777, 783 (7th Cir. 1999) (quoting *Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994)). "A pattern of racketeering activity consists, at a minimum, of two predicate acts of racketeering committed within a ten-year time period." *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 728 (7th Cir. 1998).

Bressner alleged as the predicate acts bank fraud as defined by 18 U.S.C. § 1344. Whether Bressner has properly alleged claims of bank fraud by the Ambroziaks is central to determining whether Bressner has a RICO claim and, as we shall see, whether many of the rest of Bressner's claims can stand. Under federal law, bank fraud involves a scheme or artifice:

> (1) to defraud a financial institution; or

> (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises.

18 U.S.C. § 1344. Thus, to commit bank fraud, the Ambroziaks must have developed a scheme or artifice to defraud a bank or to gain property from a bank through false or fraudulent pretenses, representations, or promises.

Bressner goes to great lengths in his original complaint in an attempt to show how Shirlee Ambroziak's two bank transactions amounted to bank fraud. If so, such fraud could be labeled as two of the predicate acts necessary to establish a pattern of racketeering activity. But, as the district court succinctly noted, "[i]t is obvious that no bank or financial institution has been defrauded by the Ambroziaks." The court went on to note that the loans were made to Amzo, "to which Dennis is a legal stranger." Amzo was not liable for Dennis's debts nor was Dennis liable for Amzo's debts.

The district court properly dismissed Bressner's RICO claim. An essential element of bank fraud is "intent to deceive *a bank* in order to obtain from it money or other property." *United States v. Lane*, 323 F.3d 568, 583 (7th Cir. 2003) (emphasis added). Bressner claims that the Ambroziaks conspired to deceive the lending banks by not disclosing that it was Dennis, not Shirlee, who was the driving force

that made Amzo a successful business. By so bestowing upon Shirlee all of the benefits of Dennis's apparent business talent, Dennis was purposely left with no income or assets in his name that Bressner could attach to satisfy his debt. But the bank fraud statute isn't designed to protect Bressner, it is designed to protect banks. *Cf. United States v. Davis*, 989 F.2d 244, 246-47 (7th Cir. 1993) ("[T]he purpose of [the bank fraud statute] is not to protect people who write checks to con artists but to protect the federal government's interest as an insurer of financial institutions."); *see also United States v. Jacobs*, 117 F.3d 82, 92 (2d Cir. 1997) ("In order for the bank fraud statute to apply, the fraud must be against the bank."). Regardless of what Dennis may have done behind the scenes, as far as the banks were concerned, Shirlee obtained the loans to Amzo on her own. As the district court noted, to say the least "Dennis and Shirlee's conduct may not be admirable." Keeping Dennis asset- and income-free while Shirlee and Amzo prosper prevents Bressner from collecting valid obligations. The scheme does not, however, defraud the banks that do business with Shirlee and Amzo. In short, the rather obvious scheme of keeping Dennis asset-free while he benefits Shirlee, Amzo and (indirectly) himself may violate some legal standard, but it is not bank fraud.

## B. The Civil Conspiracy Claim

Bressner's second amended complaint alleged a claim of civil conspiracy under Illinois law. Specifically, the complaint alleged that the Ambroziaks conspired to conceal the true nature of Dennis's contribution to, equity in, and the management of, Amzo and to conceal his true earnings and income by having them falsely appear to be Shirlee's earnings and income. The Ambroziaks argue that, even assuming Bressner may have properly alleged an agreement to

cause him injury, Bressner has not alleged an overt tortious act or unlawful conduct in furtherance of the conspiracy as required under Illinois law.

Under Illinois law, in order to allege a claim for civil conspiracy, a plaintiff must allege (1) an agreement; (2) by two or more persons; (3) to perform an overt act or acts; (4) in furtherance of the agreement/conspiracy; (5) to accomplish an unlawful purpose or a lawful purpose by unlawful means; (6) that causes injury to another. *Nichols Motorcycle Supply, Inc. v. Dunlop Tire Corp.*, No. 93-C-5578, 1994 WL 698486, at *3 (N.D. Ill. Dec. 12, 1994). The overt act or acts must be tortious or unlawful acts. *Adcock v. Brakegate, Ltd.*, 645 N.E.2d 888, 894 (Ill. 1994). Bressner has not properly alleged a state claim of civil conspiracy. The overt acts that Bressner alleged in his second amended complaint were the completion of the loan applications without reference to Dennis's role in Amzo. As discussed above, however, these applications were not tortious or unlawful. Bressner has not, therefore, alleged the necessary tortious or unlawful overt act and his claim of civil conspiracy must fail.

## C.  Fraudulent Transfer

Bressner also alleges a fraudulent transfer by Dennis under the UFTA. Section 5(a)(1) of UFTA states that:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
>
> > (1) with actual intent to hinder, delay, or defraud any creditor of the debtor;

740 ILCS 160/5(a). A transfer is defined by UFTA as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." 740 ILCS 160/2(l). The UFTA defines an asset as "property of a debtor. . . ." 740 ILCS 160/2(b). Further, property is defined by the UFTA as "anything that may be the subject of ownership." 740 ILCS 160/2(j).

Bressner's problem is that he has not identified assets Dennis has transferred to Amzo. Bressner argues that Dennis engaged (and continues to engage) in fraudulent transfers whenever he performs services for Amzo without receiving compensation. The property being transferred, Bressner argues, is the reasonable value of the services he provides to Amzo. As the Ambroziaks point out, however, Bressner provides no legal support, and this court has found none, for the conclusion that Illinois law (or any other jurisdiction) regards the *value* of services provided as an asset subject to transfer under the UFTA.

D.  Imposition of a Constructive Trust

Bressner also argues that the district court erred when it denied his request that a constructive trust be imposed on Shirlee and Amzo's assets. Illinois limits the imposition of a constructive trust to situations where there have been "specific [acts] of wrongdoing . . . such as fraud, breach of fiduciary duty, duress, coercion or mistake." *Suttles v. Vogel*, 533 N.E.2d 901, 905 (Ill. 1998). Bressner bases his request for a constructive trust on the allegations of bank fraud discussed above. Because, however, we have found those allegations deficient, we agree with the district court that there is no basis upon which to support a constructive trust.

E.   The Motion for Leave to Amend

Bressner's final argument is that the district court erred when it failed to grant his motion for leave to amend his complaint a third time. Bressner sought to amend his complaint to argue that Amzo was no more than Dennis's corporate alter ego. The motion was made after the district court had dismissed Bressner's second amended complaint with prejudice and had entered an order terminating the case.

We review a district court's denial of a motion for leave to amend for an abuse of discretion. Federal Rule of Civil Procedure 15(a) presumes that, in most cases, motions for leave to amend be liberally granted. This court has recognized, however, that this presumption is reversed in cases, such as here, where a plaintiff seeks to amend a complaint after judgment has been entered and a case has been dismissed. *First Nat'l Bank v. Continental Ill. Nat'l Bank*, 933 F.2d 466, 468 (7th Cir. 1991) (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1489 (2d ed. 1990)); *see also Doe v. Howe Military School*, 227 F.3d 981, 989 (7th Cir. 2000) (recognizing that although motions for leave to amend are to be liberally granted " 'justice may require something less in post-judgment situations than in pre-judgment situations' ") (quoting *Twohy v. First Nat'l Bank*, 758 F.2d 1185, 1196 (7th Cir. 1985)).

Leaving aside the fact that both parties neglected to discuss the standard of review for this issue, *see* Fed. R. App. P. 28(a)(9)(B) & 28(b)(5), Bressner did not offer the district court, and does not offer this court, any reason he should be permitted to amend his complaint after a judgment has already been entered. *Illinois Conf. of Teamsters and Employers Welfare Fund v. Steve Gilbert Trucking*, 71 F.3d 1361, 1368 (7th Cir. 1995) ("A party seeking amendment at that stage of the proceedings must provide the district court with a good reason to grant its motion."); *Harris v. City of Auburn*, 27 F.3d 1284, 1287 (7th Cir. 1994) ("At this juncture [after a

judgment has been entered], the party making a Rule 59(e) motion so that it can amend its complaint had better provide the district court with a good reason to grant its motion."); *First Nat'l Bank*, 933 F.2d at 468 ("First National had to have a good reason for so belated an amendment. It had none."). Without offering the district court, or this court, any reason (never mind a *good* reason) an amendment should have been permitted so late in the game, we cannot say the district court abused its discretion. *Cf. Doe*, 227 F.3d at 990 ("[P]leading is not like playing darts: a plaintiff can't keep throwing claims at the board until she gets one that hits the mark.").

### III.

Dennis Ambroziak owes Kermit Bressner a significant sum of money. The facts we have been presented (which we must here accept as true) show that Dennis has manipulated his way out of paying this debt for two decades. We, like the district court, do not find his conduct admirable. The district court did not err, however, in dismissing the Bressner's complaint. Further, the district court did not abuse its discretion in denying a post-judgment motion to amend. The district court is AFFIRMED.

A true Copy:

       Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*