In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 05-4143

MARTIN SIGSWORTH,

*Plaintiff-Appellant,*

*v.*

CITY OF AURORA, ILLINOIS, an
Illinois municipal corporation,
a body politic; DAVID STOVER,
Mayor of the City of Aurora,
Illinois, WILLIAM J. LAWLER,
Chief of Police of Aurora, *et al.*,

*Defendants-Appellees.*

———————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 C 1888—**Samuel Der-Yeghiayan**, *Judge.*

———————

ARGUED NOVEMBER 27, 2006—DECIDED MAY 25, 2007

———————

Before WOOD, EVANS, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Martin Sigsworth, an investi-
gator with the Aurora, Illinois Police Department, repre-
sented his agency on a multi-jurisdictional task force
formed to investigate gang activity in and around the
Aurora area. When key targets in a drug raid managed to
evade arrest, Sigsworth suspected that they had been
tipped off by some of the task force's members. Sigsworth
reported his suspicions to his supervisors, and he claims

that in retaliation for this speech, he was removed from the task force and passed over for promotions. Sigsworth filed suit under 42 U.S.C. § 1983 against the City of Aurora, its mayor, and various supervisory officers in the Aurora Police Department alleging violations of his First Amendment rights. He appeals the district court's dismissal of his first amended complaint. We affirm, finding that Sigsworth's speech was not made outside of his capacity as an investigator and a task force member, so he was not speaking as a citizen for First Amendment purposes. Sigsworth also objects to the district court's denial of his motions for leave to file a second amended complaint that were brought pursuant to Federal Rules of Civil Procedure 59(e) and 15(a). However, we cannot conclude that the district court abused its discretion because there were no manifest errors of law or newly discovered evidence that merited consideration, and amendments to his complaint would have been futile since his speech was made as a public employee and not as a citizen.

## I. BACKGROUND

The following allegations are taken from the first amended complaint. Martin Sigsworth joined the Aurora Police Department in 1992. In 1998, while employed as a detective in the Investigations Division, he began working with various federal agencies on a task force focused on increasing cooperation among law enforcement agencies to combat gang and drug activity in the Aurora area. In 2002, the task force obtained numerous arrest warrants for suspected drug dealers and gang members and planned to conduct a large-scale operation to execute the warrants. According to Sigsworth, the day before the planned arrests, some of the task force's members "acted in a manner so as to provide general and specific notice of

the impending raid." Because of the "improper notice," several of the targeted suspects were able to evade arrest.

After the botched raid, Sigsworth reported to his supervisors what he believed to be misconduct by the task force members which hampered execution of some of the warrants. The policy of cooperation among the organizations participating in the task force and other policies of the Aurora Police Department prompted him to complain of the procedural missteps of his task force colleagues. Defendant Chief of Police William Lawler, one of Sigsworth's supervisors, instructed him to remain silent about the circumstances surrounding the raid. A short time later, Sigsworth was removed from the task force and the associated investigation. Moreover, despite his rank at the top of the list of eligible candidates, Sigsworth was denied promotions to sergeant.

On June 16, 2005, Sigsworth filed his first amended complaint against the City of Aurora, the mayor, and various officials in the Aurora Police Department claiming that the defendants deprived him of his right to free speech under the First Amendment by retaliating against him for reporting the alleged misconduct.[1] The defendants filed a motion to dismiss, which the district court granted after finding that Sigsworth's communications were not spoken as a citizen on a matter of public concern and, therefore, not entitled to protection under the First Amendment. Sigsworth's motions to file a second amended complaint were also denied, and he now appeals.

---

[1] Sigsworth also alleged the defendants violated his right to due process under the Fourteenth Amendment by denying him a promotion. In granting the defendants' motion, the district court dismissed this claim because Sigsworth's allegations did not indicate that he had a legitimate claim of entitlement to a promotion. Sigsworth does not contest that ruling in this appeal.

## II.  ANALYSIS

### A.  Sigsworth's First Amendment Retaliation Claims

We review de novo the district court's dismissal of Sigsworth's first amended complaint. *See Chi. Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 471 (7th Cir. 2007). In doing so, we accept as true all well-pleaded factual allegations in the first amended complaint and construe all reasonable inferences from those facts in favor of Sigsworth. *See id.*

The First Amendment protects a public employee's right to speak as a citizen about matters of public concern under certain circumstances. *See Garcetti v. Ceballos*, 126 S. Ct. 1951, 1957 (2006); *Connick v. Myers*, 461 U.S. 138, 147-48 (1983); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). In such circumstances, an employer may not retaliate against an employee for engaging in protected speech. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006). To ensure that public employee speech is afforded the proper constitutional protections, we have traditionally applied the balancing test first announced in *Pickering v. Board of Education* and clarified in *Connick v. Myers* and other subsequent cases. *See, e.g., Schad v. Jones*, 415 F.3d 671, 674 (7th Cir. 2005); *Cygan v. Wis. Dep't of Corr.*, 388 F.3d 1092, 1099 (7th Cir. 2004). Under the *Connick-Pickering* test, a public employee can establish that his speech is constitutionally protected if (1) the employee spoke as a citizen on matters of public concern, and (2) the interest of the employee as a citizen in commenting upon matters of public concern outweighs the interest of the State as an employer in promoting the efficiency of the public services it performs through its employees. *See Schad*, 415 F.3d at 674 (citing *Connick*, 461 U.S. at 147; *Pickering*, 391 U.S. at 568). Applying this test, the district court dismissed Sigsworth's First Amendment retaliation claims, concluding that Sigsworth did not

speak on a matter of public concern because he failed to allege that he exceeded his normal duties when he disclosed the improper acts of the task force members to his supervisors. The district court determined that because Sigsworth could not satisfy the first requirement of the *Connick-Pickering* test, his speech was not entitled to constitutional protection.

The Supreme Court has since provided further guidance as to when a public employee speaks as a citizen for First Amendment purposes. In *Garcetti v. Ceballos*, the Court considered a First Amendment retaliation claim where the relevant speech was a memorandum from a deputy district attorney, Richard Ceballos, to his supervisors that raised concerns about misrepresentations contained in a search warrant affidavit and recommended dismissal of the case. 126 S. Ct. at 1959-60. Ceballos alleged that his employer acted in retaliation by reassigning him to a trial deputy position, transferring him to another courthouse, and denying him a promotion. *Id.* at 1956. The Court found that Ceballos did not speak as a citizen, recognizing as the controlling factor in its determination that Ceballos's memorandum was written pursuant to his duties as a deputy district attorney. *Id.* at 1959. In light of this finding, the Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 1960. The Court concluded that the deputy district attorney was not speaking as a citizen because he was merely discharging his professional responsibilities when writing his recommendation memorandum. *Id.*

With *Garcetti* in mind, we turn to Sigsworth's claims of First Amendment retaliation. The thrust of Sigsworth's argument on appeal is that he sufficiently alleged First Amendment retaliation because his speech "constituted

matters of the utmost concern to the public." However, *Garcetti* requires that before analyzing whether an employee's speech is of public concern, a court must determine whether the employee was speaking "as a citizen" or, by contrast, pursuant to his duties as a public employee. 126 S. Ct. at 1960.[2] We therefore engage in the balancing of public and private interests under *Pickering* and its progeny "[o]nly when government penalizes speech that a plaintiff utters 'as a citizen' . . . ." *Mills*, 452 F.3d at 647-48. As we explain more fully below, Sigsworth was not speaking as a citizen when he reported to his supervisors his suspicions of misconduct by his colleagues.

---

[2] *See also Mills v. City of Evansville*, 452 F.3d 646, 647 (7th Cir. 2006) (on-duty sergeant dressed in uniform did not speak as a citizen when she criticized the effectiveness of police chief's plan during discussions with her superiors); *Wilburn v. Robinson*, 480 F.3d 1140, 1151 (D.C. Cir. 2007) (interim director of D.C.'s Office of Human Rights spoke pursuant to her official duty to expose discriminatory employment practices and not as a citizen when she complained about salary disparities between job applicants); *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 694 (5th Cir. 2007) (high school athletic director's memoranda to office manager and principal inquiring about athletic account balance were written in course of performing his job as athletic director); *Haynes v. City of Circleville*, 474 F.3d 357, 362-65 (6th Cir. 2007) (police officer's memorandum protesting reductions in canine training was written in his capacity as patrolman and canine handler); *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327-32 (10th Cir. 2007) (superintendent spoke as a school district employee rather than as a private citizen when she raised concerns to board about lawful and proper conduct of school business); *McGee v. Pub. Water Supply*, 471 F.3d 918, 920-21 (8th Cir. 2006) (district manager's complaints about district's environmental compliance on two projects were made pursuant to his official duties); *Battle v. Bd. of Regents*, 468 F.3d 755, 759-62 (11th Cir. 2006) (financial aid supervisor's reports to university officials about inaccuracies and potential fraud in student files were made pursuant to her official duties).

Sigsworth claims that the report he made to his supervisors is deserving of First Amendment protection because his speech exceeded the scope of his official duties. Sigsworth relies on one of our pre-*Garcetti* cases, *Delgado v. Jones*, 282 F.3d 511, 516-20 (7th Cir. 2002), where we found that a detective's memorandum to his supervisors about suspected criminal activities involving a relative of an elected official with ties to the police chief was protected by the First Amendment. There, our decision turned on whether the detective's speech addressed a matter of public concern, which we determined by looking to the "content, form, and context" of the detective's memorandum. *Id.* at 516-17 (citing *Connick*, 461 U.S. at 147-48). With respect to the content, we acknowledged that the detective's disclosures might have been consistent with his obligations as a police officer, however, we explained that the detective "went far beyond some rote, routine discharge of an assigned duty" by exercising considerable discretion in conveying the information about the possible crimes. *Id.* at 519. In particular, we recognized that the detective's memorandum set forth "*additional facts* that were relevant to the manner and scope of any subsequent investigation." *Id.* Because our central concern in *Delgado* was the content of the detective's speech, we did not address whether the detective was speaking as a citizen when he made his report. Therefore, our pre-*Garcetti* decision in *Delgado* does not help Sigsworth.[3]

According to Sigsworth's first amended complaint, the Aurora Police Department sought the assistance of the FBI, the ATF, and other task force agencies not only to

---

[3] We do not consider whether *Delgado* or other pre-*Garcetti* First Amendment retaliation cases would withstand scrutiny under *Garcetti*.

supplement the Department's efforts, but also "to enhance and ensure a policy of [the] Aurora Police Department of cooperation with these other agencies." Sigsworth alleges that "[t]his policy of enhanced cooperation . . . was furthered by orders to the Plaintiff to maintain communication" with the deputy chief of police. He then admits that "in furtherance of the policy of cooperation," he reported the alleged misconduct by the task force members to his supervisors. Sigsworth's allegations indicate that in reporting his suspicions, he was merely doing what was expected of him as a member of the task force charged with organizing and overseeing the planning and execution of the arrest warrants.

We recently held in *Spiegla v. Hull*, No. 05-3722, 2007 WL 937081, at *5 (7th Cir. Mar. 30, 2007), that a correctional officer who was responsible for maintaining the security of a prison by regulating and monitoring vehicle and foot traffic through the prison's main gate spoke pursuant to her official duties when she reported her immediate supervisor's breach of prison security policy to another supervisor. Similarly, Sigsworth reported that task force members broke the law, and, according to him, jeopardized the success of the operation and the safety of those involved in it. In accordance with the policy of cooperation and orders to communicate with the deputy chief of police, Sigsworth reported the observed misconduct connected to the operation that he had helped to conceive and for which he had supervisory responsibilities. Because Sigsworth's speech was part of the tasks he was employed to perform, he spoke not as a citizen but as a public employee, and that speech is not entitled to protection by the First Amendment. *See Garcetti*, 126 S. Ct. at 1960 ("Restricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen."). Failing to meet the first prong of the

*Connick-Pickering* test, Sigsworth cannot advance his claims of unconstitutional retaliation.

In reaching this conclusion, we note that the defendants agree that *Garcetti* is not a categorical rule that deprives public employee speech of First Amendment protection whenever that employee complains of work-related misconduct. And, even employees who face retaliation for speech connected to a job duty may be entitled to protection under their state whistleblower statutes. *See id.* at 1962; 740 Ill. Comp. Stat. §§ 174/15 & 30 (2007) (damages available under the Illinois Whistleblower Act to an employee that has been retaliated against by his employer "for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation").

## B. Sigsworth's Requests to File a Second Amended Complaint

After the district court granted the defendants' motion to dismiss in its entirety, it denied Sigsworth's motion requesting leave to file a second amended complaint under Federal Rules of Civil Procedure 59(e) and 15(a). *See Paganis v. Blonstein*, 3 F.3d 1067, 1072 (7th Cir. 1993) (noting that once the district court has dismissed action in its entirety, plaintiff may amend the complaint with leave of court after a motion under Rule 59(e) has been made and judgment has been set aside or vacated). A district court's rulings on a party's Rule 59(e) and Rule 15(a) motions are reviewed for an abuse of discretion. *Doe v. Howe Military Sch.*, 227 F.3d 981, 989, 993 (7th Cir. 2000).

We begin with the district court's ruling on the Rule 59(e) motion to alter or amend the judgment. In disposing of Sigsworth's motion, the district court correctly observed

that Sigsworth alleged neither errors of law nor the discovery of new evidence that would warrant reconsideration of the final judgment under Rule 59(e). *See LB Credit Corp. v. Resolution Trust Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995) ("[A] Rule 59(e) motion must clearly establish either a manifest error of law or fact or must present newly discovered evidence.") (internal quotations omitted). Indeed, the motion requests leave to set forth additional facts which Sigsworth admits he intentionally omitted from his first amended complaint. However, it is well-settled that a Rule 59(e) motion is not properly utilized "to advance arguments or theories that could and should have been made before the district court rendered a judgment . . . ." *Id.* (internal citations omitted). We therefore find that the district court did not abuse its discretion in denying Sigsworth's Rule 59(e) motion.

Sigsworth filed another motion, this time asking the district court to reconsider the denial of his first Rule 59(e) motion and to allow him leave to file his proposed second amended complaint. The district court summarily denied this motion without explanation. Sigsworth's second Rule 59(e) motion suffered from the same deficiency as his first, the failure to establish any errors of law or fact or to put forth newly discovered evidence; therefore, we see no reason to find that the district court abused its discretion in denying it.

Turning to Sigsworth's request to amend under Rule 15(a), we note that because there were no grounds to set aside the district court's judgment dismissing Sigsworth's first amended complaint, Sigsworth could not further amend the complaint. *See Paganis*, 3 F.3d at 1073 n.8 (unless a final judgment is set aside or vacated, a plaintiff may not amend her complaint). The district court declined to address the merits of Sigsworth's Rule 15(a) motion to amend his complaint, but this was not error. *See Helm v. Resolution Trust Corp.*, 84 F.3d 874, 879 (7th Cir. 1996)

(noting that a district court may deny a Rule 59(e) motion without first considering the merits of the Rule 15(a) motion where the former is "doomed to denial"). Nonetheless, allowing Sigsworth to amend his complaint would be futile in light of *Garcetti*. Although the proposed second amended complaint adds detail to Sigsworth's initial allegations, it does not overcome the fact that Sigsworth's report to his supervisors of the suspected misconduct was part of his official duties as an investigator and member of the task force and, therefore, outside the scope of First Amendment protection. *See Garcetti*, 126 S. Ct. at 1960. Because the additions proposed by Sigsworth cannot cure the deficiencies of his first amended complaint, he would not be entitled to receive leave to amend under Rule 15(a).

### III.  CONCLUSION

For the reasons stated above, the district court's dismissal of Sigsworth's first amended complaint and denial of his motions for leave to file a second amended complaint are AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*

USCA-02-C-0072—5-25-07